IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIERSTEN MACFARLANE,　　　　　　　　　　　　No. 3:16-cv-01721-HZ

　　　　Plaintiff,　　　　　　　　　　　　　　　　　　OPINION & ORDER

　　v.

FIVESPICE LLC dba CAFÉ
MURRAYHILL,

　　　　Defendant.

Stephen L. Brischetto
Dezi Rae Robb
Law Offices of Stephen L. Brischetto
621 SW Morrison St., Ste. 1025
Portland, OR 97205

　　Attorneys for Plaintiff

OPINION & ORDER - 1

Jennifer A. Nelson
Alysia J. Harris
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
222 SW Columbia Street, Suite 1500
Portland, OR 97201

>Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kiersten MacFarlane formerly worked at Defendant Fivespice LLC's ("Fivespice") Café Murrayhill ("Café") as a server. She alleges employment discrimination claims against Defendant under 42 U.S.C. § 2000e *et. seq* and Oregon law. Specifically, Plaintiff alleges that Defendant's former employee sexually harassed her and that Defendant unlawfully fired her in retaliation for complaining about that harassment. Plaintiff's counsel deposed Defendant's former executive chef Martin Virgen. At that deposition, Virgen was instructed not to answer questions regarding conversations he had with Defendant's attorneys both during and after his employment with Defendant. Before the Court is Plaintiff's motion to compel answers to those questions pursuant to Federal Rule of Civil Procedure 37. Because Virgen's communications with Defendant's attorneys are protected by attorney-client privilege, Plaintiff's motion is DENIED.

## BACKGROUND

This case stems from Plaintiff's claims that Defendant's former chef, Jose Ayala, sexually harassed her. Compl. ¶ 9, ECF 1-1. Plaintiff alleges that she reported Ayala's harassment to Virgen on multiple occasions. *Id.* Virgen allegedly disregarded Plaintiff's complaints and tacitly endorsed Ayala's behavior. *Id.* Plaintiff then informed the Café's general manager, David Lawler, who responded that he would speak with Virgen about the situation. *Id.*

Within a week of Lawler's response, Virgen and Lawler met with Plaintiff and terminated her employment at the Café. Compl. ¶ 10.

In response to her termination, Plaintiff filed an employment discrimination charge with the Oregon Bureau of Labor and Industries ("BOLI") and the Equal Opportunity Commission. Compl. ¶ 13. One of Defendant's former attorneys, Sean Driscoll, met with Virgen at the Café while Virgen was still employed with Defendant to discuss Plaintiff's BOLI Complaint. Lawler Decl. ¶ 1, ECF 22-2. Shortly thereafter, Virgen resigned from his employment with Defendant. As a former employee, Virgen met with one of Defendant's current attorneys, Alysia Harris, to discuss Plaintiff's claims. At his deposition, Virgen testified that Plaintiff complained to him about Ayala's behavior. When Plaintiff's attorney asked Virgen if he told Driscoll about Plaintiff's complaints, Defendant's attorney objected asserting attorney-client privilege and Virgen was instructed not to answer the question. Virgen Decl. 126–28, ECF 22-1.

## STANDARDS

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Pursuant to Federal Rule of Civil Procedure 37, a party may move for an order compelling a discovery response if a deponent fails to answer a question asked in accordance with Rule 30. Fed. R. Civ. P. 37(a)(3)(B). Rule 30 provides that a person may instruct a deponent not to answer a question when necessary to preserve a privilege. Fed. R. Civ. P. 30(c)(2). The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.1997)).

//

DISCUSSION

Plaintiff submits two motions to compel, arguing that: (1) Virgen's post-employment conversations with Defendant's lawyers are not privileged; and (2) Defendant waived any privilege regarding Virgen's conversation with Driscoll during his employment.

I.  **Virgen's Post-Employment Conversations with Defendant's Attorney**

Plaintiff argues that the attorney-client privilege does not protect Virgen's post-employment communications with Defendant's attorney because, as a former employee, he was not acting at the direction of management and his interests were adverse to Defendant's interests. Under Federal Rule of Evidence 501, "federal law governs the availability and scope of the attorney-client privilege in nondiversity actions." A*dmiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989) (citing *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977)). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449, U.S. 383, 389 (1981)). The attorney-client privilege exists:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quotation and citation omitted). "In *Upjohn*, the Supreme Court held that a corporation's privilege extends to communications between corporate employees and corporate counsel so long as the communications are 'made at the direction of corporate superiors in order to secure legal advice.'" *Id.* (citing *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996)). Courts do not mechanically apply the attorney-client

privilege in the corporate context. *Id.* The Ninth Circuit has also extended *Upjohn*'s rationale to former employees, stating that "[f]ormer employees, as well as current employees, may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties." *Admiral Ins. Co.*, 881 F.2d at 1493 (citing *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981)).

In this case, Plaintiff argues that Virgen, as a former employee, was not acting at management's direction and that he was uncooperative regarding scheduling his deposition. Plaintiff's position is at odds with Ninth Circuit precedent. In *Admiral*, the Ninth Circuit explained that "communications between former employees and corporate counsel would be privileged if the employee possesses information critical to the representation of the parent company and the communications concern matters within the scope of employment." *Id.* at 1493 n.6. Virgen had information critical to Defendant's case regarding Plaintiff's complaints and employment. In particular, he received Plaintiff's complaints regarding Ayala's alleged harassment and he was present when Plaintiff's employment was terminated. That information is highly pertinent to any defense regarding Plaintiff's employment discrimination claims based on sexual harassment and retaliation. Further, Virgen's communications concerned the scope of his former employment as Defendant's executive chef.

Plaintiff also argues that there was animosity between Virgen and Fivespice management which precipitated his resignation. Specifically, Plaintiff asserts that the real reason Virgen left his employment with Defendant was because management had been critical of his performance and instituted a verbal plan for improvement. Because Virgen's interests were adverse to Defendant's interests, Plaintiff claims that the attorney-client privilege was inapplicable to his post-employment conversations with Defendant's attorney. At his deposition, however, Virgen

testified that he left Defendant's employ for a more attractive opportunity and that he had no hard feelings towards management. In any event, whether or not Virgen's interests were adverse to Defendant's plays no role in the attorney-client privilege determination here. Plaintiff provides no legal support for the proposition that adverse interests would render the communications at issue non-privileged. Such a requirement is absent from the attorney-client privilege analysis as announced in *Upjohn* and *Admiral*. Accordingly, the Court rejects this argument as well.

### II. Waiver of Attorney-Client Privilege

Next, Plaintiff argues that attorney-client privilege has been waived regarding Virgen's conversation with Driscoll that took place during his employment. After Plaintiff filed her BOLI Complaint, Driscoll and Lawler met with Virgen at the Café to discuss her allegations. Plaintiff asserts that Virgen voluntarily disclosed the substance of his communications with Driscoll at his deposition, thereby waiving the attorney-client privilege. Moreover, Plaintiff contends that the communications were not privileged because the conversation took place in public at the Café.

Courts construe the attorney-client privilege narrowly to serve its purposes and recognize that voluntary disclosure may waive the privilege. *In re Pac. Pictures Corp.*, 679 F.3d 112, 1126–27 (9th Cir. 2012). "Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject." *Richey*, 632 F.3d at 566 (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)). Pursuant to Federal Rule of Evidence 502(a), "the waiver extends to an undisclosed communication . . . only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." A disclosure does not operate as a waiver if it is inadvertent, the

"holder of the privilege or protection took reasonable steps to prevent disclosure," and the holder "promptly took reasonable steps to rectify the error." Fed. R. Civ. P. 502(b).

Plaintiff points to three separate disclosures from Virgen's deposition to show that the privilege was waived. First, when Defendant's attorney questioned Virgen about his prior statement that he thought one of Defendant's responses to Plaintiff's BOLI complaint was false. Second, when Plaintiff's counsel asked Virgen to clarify that one of his answers referred to a communication with Defendant's attorney. Third, when Virgen testified that he did not tell Defendant's attorney about Plaintiff's complaints.

Regarding the first alleged disclosure, Virgen testified that he thought he had reported Plaintiff's complaints to someone above him at Fivespice. Brischetto Decl. Ex. A, at 15–16. Plaintiff's counsel showed Virgen Defendant's response to Plaintiff's BOLI Complaint in which Defendant stated that Plaintiff "never complained to any member of management or anyone else, to its knowledge, that Mr. Ayala engaged in any sexually harassing behavior." *Id.* at 17. Plaintiff's counsel then asked Virgen if, from his standpoint, Defendant's statement was false. *Id.* at 18. He answered "yes." *Id.* Virgen and Defendant's attorney then had the following exchange:

> Q. And I believe — and I could be wrong about this and correct me if I'm misstating what you testified to, but I believe that you testified that you believed the response to this particular paragraph was false. Do you recall giving that testimony?
>
> A. Well, at the time I don't know if my explanation was clear enough. I don't know. But I — I say what I — What I know at the moment. And then I don't know exactly the time when that happened, but this what — the only — if I can call them complaint or concern happened, what was — that was the only one time. And I don't remember if when I was — when I was asked the question, I explained myself clear enough and that has been misinterpreted or what. I don't know.

Harris Decl. Ex. 1, at 18–19. Virgen then testified that he did not remember if three members of Defendant's management knew of Plaintiff's complaint. *Id.* at 19. The Court finds that this testimony does not constitute a waiver of the attorney-client privilege. Virgen did not disclose the substance of his confidential communications with Defendant's attorney. Rather, Virgen merely stated that he could not remember if he reported Plaintiff's complaints to Fivespice management. Virgen's exchange with Defendant's attorney above does not shed any light what he said to Driscoll. Additionally, Virgen's statement that Defendant's answer to Plaintiff's BOLI Complaint was false does not amount to a disclosure of his communications with Driscoll.

Virgen's second alleged disclosure deals with the same line of questioning. On re-direct at Virgen's deposition, Plaintiff's counsel asked Virgen the following question:

> Q: So, Mr. Virgen, you were asked a question about paragraph 8 and you said — from Fivespice's lawyers, and you said, "I don't know" — something to the effect — these are your exact words, but this is kind of what I heard — something to the effect of "I don't know if my explanation was clear enough. I say what happened. I don't remember if I was clear enough." That reference was to your communications with Fivespice lawyers correct?
>
> Ms. Nelson: Objection to the extent it mischaracterizes his testimony.
>
> THE WITNESS: Yeah, yeah.

Brischetto Decl. Ex. A, at 20–21. Virgen went on to explain that he gave information to a male Fivespice lawyer in Lawler's presence in one of the booths at the Café. *Id.* at 21–22. Here too, the Court finds that Virgen's testimony did not constitute a voluntary waiver of the attorney-client privilege. It was unclear whether Virgen was stating that he had a hard time explaining himself to Defendant's attorney present at the deposition or whether he was referring to his prior conversation with Driscoll. This statement is not equivalent to disclosing the substance of what he communicated to Driscoll. Virgen's statements regarding the circumstances of his

conversation with Driscoll also do not waive the privilege. "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . ." *Upjohn*, 449 U.S. at 395 (citation omitted). Virgen's statements that he met with Driscoll at the Café and in Lawler's presence, in other words, do not disclose what Virgen said to Driscoll.

The final alleged disclosure was made at the end of Virgen's deposition. The parties had the following exchange:

> Q. So did you tell the lawyer that — that MacFarlane had complained to you about Mr. Ayala?
>
> A. No.
>
> MS. NELSON: Objection. Objection to the extent it seeks to invade the attorney client privilege. I'm objecting on the same basis as information that Mr. Virgen was giving to anyone from my firm while he was employed by Fivespice is I believe subject to attorney-client privilege based on several ethics opinions pertaining to management employees. So therefore, any answer that he's going to give to this I believe is inadmissible.

Harris Decl. Ex. 1, at 22. Virgen's attorney then instructed him not to answer the question. *Id.* The Court agrees with Defendant that its counsel immediately objected to Plaintiff's attorney's question and that Virgen's single word response did not constitute a waiver. Defendant's attorney's timely objection constitutes a reasonable step to prevent and rectify inadvertent disclosure under Federal Rule of Evidence 502(b). Accordingly, the Court finds that Virgen's disclosure did not operate as a waiver.

Moreover, Plaintiff asserts that Virgen's conversation with Driscoll occurred` in a setting where it could have been heard by the public and is not therefore privileged. Lawler, who was present during the conversation, testified to the following: no one else participated in the meeting; it occurred in the morning during off-peak hours; there were few people in the

restaurant; no Café employees or customers sat near them at any point during the meeting; the conversation participants did not raise their voices; their booth was ten feet away from any occupied table; and that the conversation, in his perception, was out of earshot. Lawler Decl. ¶¶ 3–4, ECF 23. Virgen and Driscoll's communications were made in confidence and not overheard by any third party. The Court finds that this was a sufficiently confidential setting for maintaining the attorney-client privilege.

CONCLUSION

Plaintiff's Motion to Compel [18] is DENIED.

Dated this 4 day of May, 2017.

Marco Hernández
MARCO A. HERNÁNDEZ
United States District Judge